IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re *Ex Parte* Application of Petronas Azerbaijan (Shah Deniz) S.à.r.l and Petronas South Caucasus S.à.r.l, pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings | )<br>)<br>)<br>) Case No. 24-1283 (CFC)<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN OPPOSITION TO CF TAURUS (US) LLC'S MOTION TO QUASH AND VACATE AND IN SUPPORT OF PETITIONERS' CROSS-MOTION TO COMPEL COMPLIANCE WITH THE SUBPOENA**

Dated: February 28, 2025

BAKER & HOSTETLER LLP
Jeffrey J. Lyons (#6437)
1201 N. Market Street, Suite 1407
Wilmington, DE 19801
(302) 407-4222
jjlyons@bakerlaw.com

Oren J. Warshavsky
Gonzalo S. Zeballos
J'Naia L. Boyd
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212-589-4200
Facsimile: 212-589-4201
owarshavsky@bakerlaw.com
gzeballos@bakerlaw.com
jlboyd@bakerlaw.com

*Attorneys for Petronas Azerbaijan (Shah Deniz) S.à.r.l and Petronas South Caucasus S.à.r.l*

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................................1

FACTUAL BACKGROUND ....................................................................4

ARGUMENT ...........................................................................................6

I.  RESPONDENT'S MOTION TO QUASH AND REQUEST FOR
    ATTORNEY'S FEES SHOULD BE DENIED BECAUSE THE
    SUBPOENA IS NEITHER UNDULY BURDENSOME NOR
    INSTRUSIVE .................................................................................6

II. RESPONDENT'S MOTION TO VACATE SHOULD BE DENIED
    BECAUSE THE APPLICATION SATISFIES THE STATUTORY
    REQUIREMENTS OF 28 U.S.C. § 1782 .....................................14

    A.   The "For Use" Standard Is Clearly Satisfied .....................14

    B.   The Court Properly Exercised Its Discretion to Grant the 1782
         Application ..........................................................................23

         1.   The First Discretionary Factor Is Satisfied ...............23

         2.   The Third Discretionary Factor Is Satisfied .............25

         3.   The Fourth Intel Factor Also Favors Petitioners ......27

III. RESPONDENT IS NOT ENTITLED TO ATTORNEY'S FEES AND
     COSTS ........................................................................................27

IV. RESPONDENT SHOULD BE COMPELLED TO RESPOND TO
    THE SUBPOENA ......................................................................28

CONCLUSION .....................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l*
    *(USA) Ltd.*,
    785 F. Supp. 2d 434 (S.D.N.Y. 2011) .................................................17

*Ameritas Life Ins. Corp. v. Wilmington Sav. Fund Soc'y*,
    C.A. No. 23-236-GBW, 2024 WL 4452481 (D. Del. Oct. 9, 2024) .................29

*In re Ex Parte Application of Blue Dog Group Party Ltd. v. Glaucus*
    *Research Group California, LLC*,
    No. A-23-CV-265-DII-ML, 2023 WL 6978076 (W.D. Tex. Sept.
    1, 2023), *report and recommendation adopted sub nom. Blue Dog*
    *Group Party Ltd. v. Glaucus Research Group California, LLC*, No.
    1:23-CV-265-DII, 2023 WL 6979611 (W.D. Tex. Oct. 23, 2023) ..............18, 19

*In re Application of Hornbeam Corp.*,
    No. 14 Misc. 424, 2014 WL 8775453 (S.D.N.Y. Dec. 24, 2014) .....................17

*In re Application of Polygon Glob. Partners LLP*,
    No. 21-mc-007 WES, 2021 WL 1894733 (D.R.I. May 11, 2021) ....................27

*In re Application of Stephen Shefsky*,
    No. 2:23-cv-00633-JCM-BNW, 2024 WL 2275215 (D. Nev. May
    20, 2024) ........................................................................................18

*In re BNP Paribas Jersey Tr. Corp. Ltd.*,
    No. 18-mc-00047 (PAC), 2018 WL 895675 (S.D.N.Y. Feb. 14,
    2018) ..............................................................................................27

*In re BonSens.org*,
    95 F.4th 75 (2d Cir. 2024) .........................................................21, 22

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
    673 F.3d 76 (2d Cir. 2012) ..............................................................23

*Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.*,
    613 F. App'x 319 (5th Cir. 2015) .......................................................18

*In re CI Invs. Inc.*,
  No. 23 Misc. 434 (GHW) (GS), 2023 WL 8643965 (S.D.N.Y. Dec.
  14, 2023) ........................................................................................................27

*Emory v. Astrazeneca Pharms.*,
  No. Civ.A. 02-1466 JJF, 2003 WL 22136301 (D. Del. Sept. 4,
  2003) .................................................................................................................7

*In re FourWorld Cap. Mgmt. LLC*,
  No. 23-1460-GBW, 2024 WL 1637400 (D. Del. Apr. 16, 2024) ...............14, 27

*In re Gen. Mfg. Indus., LLC*,
  No. 22-mc-596-CFC-SRF, 2023 WL 2213199 (D. Del. Feb. 24,
  2023) ...............................................................................................................29

*Gordian Med., Inc. v. Vaughn*,
  No. 22-319-MN-SRF, 2023 WL 2930257 (D. Del. Apr. 13, 2023)...................28

*IJK Palm LLC v. Anholt Servs. USA, Inc.*,
  33 F.4th 669 (2d Cir. 2022) ..............................................................................21

*In re Intel Corp. Microprocessor Antitrust Litigation*,
  No. 05-485-JJF, 2008 WL 4861544 (D. Del. Nov. 7, 2008).......................18, 19

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004).............................................................................14, 15, 23

*In re JSC BTA Bank*,
  577 F. Supp. 3d 262 (S.D.N.Y. 2021) ..........................................................16, 17

*In re Med. Corp. Tenraiji Kana Dermatology*,
  No. 23-mc-80123-BLF, 2023 WL 3082351 (N.D. Cal. Apr. 24,
  2023) ...............................................................................................................16

*In re Med. Inc. Ass'n Shokokai*,
  No. 22-mc-80250-BLF, 2022 WL 4591796 (N.D. Cal. Sept. 29,
  2022) ...............................................................................................................17

*In re Nokia Techs. Oy*,
  C.A. No. 23-01395-GBW, 2024 WL 1675025 (D. Del. Apr. 18,
  2024) ...........................................................................................................25, 26

iii

*In re of Lucille Holdings Pte. Ltd.*,
No. 1:21-mc-99 (GMH), 2022 WL 1421816 (D.D.C. May 5, 2022) ................20

*Rardon v. Falcon Safety Prods., Inc.*,
No. 23-1594, 2023 WL 5347298 (3d Cir. Aug. 21, 2023). .............................6, 7

*In re Team Co., Ltd.*,
No. 22-mc-80183-VKD, 2022 WL 4099219 (N.D. Cal. Sept. 7,
2022) ................................................................................................................16

*In re Team Co., Ltd.*,
No. 22-mc-80183-VKD, 2023 WL 1442886 (N.D. Cal. Feb. 1,
2023) ................................................................................................................16

*In re TextNow, Inc.*,
No. 24-mc-247-JLH-SRF, 2024 WL 2804704 (D. Del. May 31,
2024) ................................................................................................................29

*In re TQ Delta*,
No. 17-mc-328-RGA, 2018 WL 5033756 (D. Del. Oct. 17, 2018) ....................7

**Statutes**

28 U.S.C. § 1782 ..............................................................................*passim*

28 U.S.C. § 1782(a) .......................................................................................15, 24

**Rules**

Fed. R. Civ. P. 26(b)(1) ...................................................................................29

Fed. R. Civ. P. 45 ........................................................................................7, 29

Fed. R. Civ. P. 45(c)(3)(A) ..............................................................................6

**Other Authorities**

S. Rep. No. 1580, 88th Cong., 2d Sess., 7 (1964) ...................................14

iv

Petronas Azerbaijan (Shah Deniz) and Petronas South Caucasus (collectively, "**Petitioners**"), submit this memorandum of law in support of their opposition to Respondent CF Taurus (US) LLC's ("**Respondent**") Motion to Quash and Vacate (the "**Motion**") and in support of Petitioners' Cross-Motion to Compel Compliance with the Subpoena.

## INTRODUCTION

Respondent's Motion mischaracterizes the underlying subpoena (the "**Subpoena**") as unduly burdensome, despite the fact that the parties' meet and confer process narrowed the Subpoena to a single subset of documents relating to just one of the document requests contained in the Subpoena. Notwithstanding Petitioners' willingness to accept a declaration that no responsive documents exist— a solution proposed and then abandoned by Respondent itself—Respondent still maintains that the Subpoena is somehow improper. But Respondent refuses to conduct a search to determine whether documents responsive to Petitioners' single remaining document request even exist, belying any claim of burden. As it does not know whether such documents exist, Respondent's claim that the requested documents are too costly to produce, too difficult to obtain, or too voluminous to reasonably review, all ring hollow.

Respondent also mischaracterizes the meet and confer process, ignoring Petitioners' multiple attempts to reach an amicable resolution to this discovery

dispute.[1]  Rather than engage in meaningful negotiations, Respondent (1) failed to provide a draft of the declaration it proposed; (2) insisted that if Petitioners did not withdraw the Subpoena and the *entire* 1782 application (the "**Application**"), *and* reimburse Respondent for the costs of the D.I. 17 at Respondent would file that Motion.  Petitioners nevertheless proffered multiple drafts of the proposed declaration and significantly narrowed their document requests.

In the final discussion, Respondent's counsel revealed that its prior statements that it conducted a "reasonable investigation" were untrue.  In fact, *Respondent conducted no search for responsive documents at all*; relying instead solely on the fact that Respondent did not invest in the underlying Arbitration.[2]  This does not comprise a "reasonable investigation" or search in any meaningful sense.  This is especially true because the contemplated actions involve a fraudulently obtained arbitral award for which the identity of the funding entity and any representations about the Arbitration are highly relevant.  This kind of information can be ascertained through materials such as solicitations for investment in the Arbitration—solicitations that could have taken place at any time during the

---

[1] Unlike Respondent, Petitioners attach the full meet and confer record as Exhibits A – K to the Declaration of J'Naia L. Boyd dated February 28, 2025 ("Boyd Decl.").

[2] Unless otherwise stated, capitalized terms have the same definitions as set forth in the Application.

Arbitration or the improper efforts to enforce the purported awards relating thereto. Accordingly, Respondent may very well have relevant documents *even if Respondent did not invest, and even if the solicitation was made well after the Arbitration was initiated.* Moreover, if Respondent turned down the investment, its reasons for doing so may also be highly relevant since it might impact on the good faith of the Arbitration. The relevance of Petitioners' request is thus manifest. Respondent's inexplicable opposition to the proposed declaration (or refusal to even provide a revision thereto) strongly suggests that it may possess the sought-after marketing materials (and/or analysis of those materials) and that it simply does not wish to produce them. If Respondent had no responsive documents, it presumably would have signed the proposed declaration and ended this saga.

Finally, Respondent's arguments regarding the sufficiency of the contemplated actions are meritless. None of the cases it cites support its position. Those cases involve matters where the details of the underlying pleading are barely laid out in clearly speculative claims. Respondent's dismissive assertion that "if petitioners could have sued they would have," would, if adopted, wipe out two decades of Supreme Court jurisprudence regarding contemplated actions and ignores

3

Section 1782's very purpose.[3]   The claims here, which are set forth in a highly detailed thirty-three page memorandum of law supporting the Application are anything but speculative.   There is simply no question that Petitioners have the claims they intend to file abroad.   There is no question who the vast majority of defendants will be.   There is no question concerning the types of claims and their statutory bases.   What remains unknown to Petitioners is the identity of all the Therium investment vehicles and SPVs that, against all commercial logic and practice, provided the funding for the Arbitration (even after the Arbitrator's criminal conviction).   Disclosure of this type of information is routinely granted in 1782 applications and was correctly granted here.

## **FACTUAL BACKGROUND**

The detailed facts set forth in the Application are hereby incorporated by reference as though fully set forth herein.   (D.I. 1–D.I. 6.)   To address Respondent's speculative assertion that Petitioners lack the ability to sue the targeted defendants

---

[3] The fact that Petitioners have not yet filed is irrelevant to this Motion—as Respondent correctly points out, the Application must be adjudicated on its merits as filed.

in the contemplated actions, it is nevertheless worth revisiting some of the key facts set forth in the Application.

Petitioners' Application details their intent to pursue a civil claim against Mr. Stampa in Spain for damages arising from the harm incurred, and which continues to be incurred, by Petitioners as a direct consequence of the rogue Arbitration. Petitioners also intend to bring civil claims in Spain against the Sulu Claimants, their attorneys who include Mr. Paul Cohen ("**Mr. Cohen**"), Ms. Elisabeth Mason ("**Ms. Mason**"), and the Spanish law firm, B. Cremades y Asociados ("**Cremades**"), and the entity (or entities) funding and/or supporting the Sulu Claimants in the Arbitration and the global enforcement proceedings (the "**Funder**"), comprised of special purpose vehicles or other entities related to the Therium Group of companies (of which, Therium Capital Management Ltd. ("**Therium**"), Therium Capital Management (USA) Inc. ("**Therium Capital**") are all members) (collectively, the "**Therium Group**")), for acting with willful negligence by purposefully ignoring the revocation by the Spanish courts of Mr. Stampa's authority as arbitrator prior to the issuance of the discredited Final Award, and instead requesting Mr. Stampa to purport to move the seat of the Arbitration from Madrid to Paris, away from the Spanish court's jurisdiction. *See* Soriano Decl. ¶¶ 24, 38, 40–41, D.I. 5-2. Petitioners also intend to commence a private prosecution against Cremades, the Sulu Claimants, and/or members of the Therium Group for causing Mr. Stampa to

5

commit the offence of disobedience. *See id.* at ¶ 43. Finally, Petitioners intend to pursue civil claims against the Sulu Claimants and members of the Therium Group in Luxembourg to recover the losses arising out of the Attachments (as defined in the Application) improperly brought against them in Luxembourg despite the Spanish courts having nullified Mr. Stampa's appointment as Arbitrator. *See* Trevisan Decl. ¶¶ 41–42, D.I. 5-3.

Petitioners know that the Therium Group underwrote the Arbitration but must identify the specific Therium Group entities involved before certain of the contemplated foreign claims can be filed against them. This is, contrary to Respondent's assertion, precisely the kind of information that countless 1782 applications have successfully sought and obtained.

## **ARGUMENT**

**I.    RESPONDENT'S MOTION TO QUASH AND REQUEST FOR ATTORNEY'S FEES SHOULD BE DENIED BECAUSE THE SUBPOENA IS NEITHER UNDULY BURDENSOME NOR INSTRUSIVE**

"On timely D.I. 17 at the court for the district where compliance is required must quash or modify a subpoena that . . . iv) subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A). To determine whether an undue burden exists, courts assess "relevance, the need for the information requested, whether the information can be obtained by other means, burdens the subpoena may impose, the status of the recipient as a non-party, and the costs of compliance." *Rardon v. Falcon*

*Safety Prods., Inc.*, No. 23-1594, 2023 WL 5347298, at *2 (3d Cir. Aug. 21, 2023). A court must analyze or balance these factors before determining whether there is a sufficient basis to quash the subpoena. *See id.* at *3 (vacating district court's order quashing the subpoena and remanding so that the district court can conduct a "more fulsome undue burden analysis"). The burden lies with the moving party to meet the requirements of Rule 45. *In re TQ Delta*, No. 17-mc-328-RGA, 2018 WL 5033756, at *1 (D. Del. Oct. 17, 2018); *Emory v. Astrazeneca Pharms.*, No. Civ.A. 02-1466 JJF, 2003 WL 22136301, at *1 (D. Del. Sept. 4, 2003).

As the moving party, Respondent has failed to demonstrate that the Subpoena is unduly burdensome. At a very early stage of negotiations, Respondent offered to provide a declaration certifying that it lacked responsive documents, in exchange for which Petitioners were to deem the Subpoena satisfied. *See* Boyd Decl.¶¶ 10–11. Despite this offer, Respondent (1) never provided a draft declaration; (2) rejected the one proposed by Petitioners; (3) refused to provide a redline against Petitioners' draft; (4) and rather than negotiate, simply insisted that Petitioners withdraw the 1782 Application *and* pay its costs for preparing this as-yet unfiled Motion. *See id.* at ¶¶ 18, 20–21. Respondent remained unmoved on this position even though at the final stage of negotiations, Petitioners sought only confirmation of representations made by Respondent's counsel and confirmation that Respondent was not in the

possession of a just one single category of documents sought by the Subpoena. *See id.* at ¶ 32 and Exhibit I thereto.

The record unequivocally supports this account, as confirmed by Respondent's counsel, who, in a January 31, 2025 email, stated "I explained that Respondent did not invest in the Sulu Litigation *and that we would be happy to provide a declaration to that effect.*" *Id.* at ¶ 20 (emphasis added). In that same email, counsel continues "[w]e again confirm that *the CF Taurus entities (as defined in your declaration)* did not invest, finance, or in any way provide support to the Sulu Claimants in the Sulu Litigation, whether directly or indirectly." *Id.* at ¶ 18. Although Respondent attempts to characterize the proposed declaration as unduly burdensome because it sought confirmation from other CF Taurus entities, the proposed declaration sought, with regard to this point, only an affirmation of things that Respondent had already confirmed via email:

> I [CF Taurus] hereby confirm that, based on the fact that neither CF Taurus, nor any of its affiliates, parent entities, or subsidiaries, including, but not limited to, CF Taurus (Cayman) Ltd. and Fortress Investment Group, LLC (collectively, the "**CF Taurus Entities**") invested in the underlying arbitration that is the subject of the Application (the "**Arbitration**"), the CF Taurus Entities have no responsive documents in their possession, custody, or control that relate to any investment by the CF Taurus Entities in the Arbitration.

*Id.*, Exhibit I. As is plain, this language *virtually mirrors* the language Respondent's counsel used in the correspondence with Petitioners' counsel.

In the final meet and confer session, which took place on February 3, 2025, Respondent's counsel explained that *no search for responsive documents had been conducted at all. See id.* at ¶ 26.  Rather, Respondent (wrongly) took the position that it could not have responsive documents simply because it did not invest in the Arbitration. *See id.*  Counsel for Petitioners explained that this does not necessarily mean that Respondent could not have responsive documents, for example, marketing materials sent from the Therium Group to Respondent would be relevant and responsive to the Subpoena (specifically, request No. 2)[4] even though Respondent did not invest. *See id.*  This exchange is memorialized in an email dated February 3, 2025, from Petitioners' counsel, to Respondent's counsel, which states:

> I understand that your client determined it does not have responsive documents because it did not invest in the arbitration.  Notwithstanding that your client did not invest in the arbitration, our client would nevertheless request production of any materials provided to your client

---

[4] Request No. 2 in the Subpoena requests:

> All non-privileged documents and communications arising from, relating to, or in any way concerning, the Sulu Claimants and any of their alleged claims against Malaysia, the Arbitration and/or the enforcement of the Awards including, but not limited to, the Therium Group's due diligence on, and financial support for, the Sulu Claimants and any of their alleged claims against Malaysia, Sulu Claimants' filing of an ex parte petition with the Tribunal de Grande Instance de Paris for recognition of the Partial Award, and any steps taken subsequent to the petition being granted on September 29, 2021, and Mr. Stampa's purported reseating of the Arbitration from Madrid to Spain on October 11, 2021.

*See* Subpoena, D.I. 1-7.

> that describe the proposed investment even if it was turned down. Depending on the nature of those materials, upon further reflection, we may further request any non-privileged materials relating to the decision to turn the investment down. It is my understanding that your client did not undertake a search to see if those documents exist. To the extent that your client is willing to undertake that search and determines that no such documents exist, we believe we can still resolve this with a declaration that your client has no responsive documents.

*Id*. at ¶ 28.    Petitioners' counsel signed off stating, "[i]f you believe I have misconstrued anything, we remain open to further discussion."    No response contradicting Petitioners' version of events was received. *Id.* at ¶ 29.

Petitioners then sent Respondent another version of the proposed declaration, which asked Respondent to confirm the following additional statement:

> In addition, I hereby confirm that the CF Taurus Entities are not in possession of any materials received from the Therium Group (as that term is defined in the Subpoena), or any entity related to the Therium Group, soliciting an investment in the Arbitration.

*Id.* at ¶ 32 and Exhibit I thereto.  Respondent refused to execute that version, refused to provide a redline, and refused to engage in any further negotiation and filed the instant Motion. *See id.* at ¶¶ 35–38.

Respondent contends that these two statements are unduly burdensome and alleges that Petitioners are demanding broad-ranging irrelevant discovery from multiple entities involving nineteen document requests.[5]  This is simply untrue.  At

---

[5] Respondent hyperbolically refers to "sweeping discovery" demands "contain[ed in] 19 discovery requests seeking information from not just respondent, but . . . also

this stage in the negotiations, the only document request for which Petitioners seek production, is for <u>one single subset of documents in one document request</u>. Specifically, Petitioners seek any marketing materials that Respondent received soliciting an investment in the Arbitration and any non-privileged documents detailing Respondent's reasoning for turning down that investment. That request could be burdensome only if Respondent (1) has responsive documents and (2) is able to establish that such production would be unfair to it. But Respondent refuses to even look, accordingly, it is precluded from arguing that the production of any responsive documents it may have is unduly burdensome.

Respondent raises four issues in support of its argument on burden. *First*, Respondent argues that Petitioners have failed to show any relevance of the discovery requested from Respondent. This is inaccurate. Petitioners seek to identify the Therium entities that invested in the Arbitration and why Respondent turned down the investment opportunity—this is precisely the narrowly tailored discovery sought here. Respondent goes on to state, "[t]o the extent petitioners are seeking irrelevant documents, including about transfers between Respondent and the Therium Group, it is unduly burdensome to require Respondent to search for or produce them." (D.I. 17 at 18.) Petitioners do not seek any such documents. As the

---

any of its 'affiliated entities. . . . [that are] all-encompassing, covering essentially all documents even tangentially related to the Sulu Regulation." (D.I. 17 at 5.)

meet and confer record clearly establishes, Petitioners ask only for Respondent to confirm by declaration that it never invested in the Arbitration and to search for any marketing materials provided by the Therium Group soliciting an investment in the Arbitration, and to the extent they exist, any non-privileged documents relating to Respondent's decision not to invest. That Respondent did not exist at the time the Arbitration was commenced is irrelevant, as the solicitation could have been made at any time during the pendency of the Arbitration or the efforts to enforce the purported Awards arising therefrom. That Respondent did not invest is similarly irrelevant to this request, as the existence of relevant documents does not depend on Respondent having made an investment.

*Second,* Respondent states, "to the extent that the subpoena seeks information from Respondent's affiliates, the application has not identified those parties, explained why information from them is relevant, established that Respondent has possession, custody, or control over those documents, or established that those entities have any connection to the Sulu [Arbitration]." (*Id.* at 19.) This statement is contradicted by Respondent's correspondence with Petitioners in which Respondent's counsel states, "[w]e again confirm that the CF Taurus Entities (as defined in your declaration) did not invest, finance, or in any way provide support to the Sulu Claimants in the Sulu Litigation, whether directly or indirectly." Boyd Decl. ¶ 18 and Exhibit F thereto. Counsel could not have made that representation

12

if (a) Respondent did not know who the CF Taurus Entities were, and (b) if Respondent did have not sufficient possession, custody, or control over those entities' records to make that assertion. If Respondent had the ability to make that representation in good faith, it has the ability to check whether Respondent and the CF Taurus Entities have possession, custody, or control of the one remaining category of documents sought by Petitioners.

*Third*, Respondent argues that "the Subpoena requests nineteen categories of documents covering any conceivable connection to the Sulu [Arbitration] over a nine-year period. Petitioners have articulated no reason why such expansive discovery is relevant or proportional." (D.I. 17 at 19.) This is inaccurate. Again, the meet and confer record clearly establishes that Petitioners have narrowed the document requests *to a single specific sub-category of documents within the scope one single document request—Request No. 2*. Boyd Decl. ¶¶ 26, 32, 36. The discovery sought is neither expansive nor burdensome, it is precise and narrowly tailored, and its relevance has been clearly articulated to Respondent.

*Fourth*, Respondent argues that "any documents related to transfers between Respondent and the Therium Group would be available from Therium" and that "Petitioners have failed to show any relevance of the broad swath of documents sought, and weighed against the burden to Respondent, the Subpoena is unduly

13

burdensome." (D.I. 17 at 19–20.) Petitioners do not seek *any* such documents, nor do Petitioners seek a "broad swath" of documents.

## II. RESPONDENT'S MOTION TO VACATE SHOULD BE DENIED BECAUSE THE APPLICATION SATISFIES THE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782

Courts are authorized to grant an application made pursuant to 28 U.S.C. § 1782 where "(1) the person from whom discovery is sought resides or is found within the district; (2) the discovery is for use in a proceeding in a foreign or international tribunal; and (3) the application is made by an interested person." *In re FourWorld Cap. Mgmt. LLC,* No. 23-1460-GBW, 2024 WL 1637400, at *3 (D. Del. Apr. 16, 2024). Respondent concedes that the first and third statutory requirements are satisfied. Accordingly, Petitioners' response addresses only the "for use" standard, which is challenged by Respondent.

### A. The "For Use" Standard Is Clearly Satisfied

Section 1782's requirement that the evidence obtained be "for use" in a foreign proceeding "does not limit the provision of judicial assistance to 'pending' adjudicative proceedings." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 258 (2004). In fact, Congress specifically removed the word "pending" from the statute in 1964 to allow would-be litigants to gather evidence before proceedings—often necessary in civil code jurisdictions. S. Rep. No. 1580, 88th Cong., 2d Sess., 7 (1964). Actions reasonably contemplated at the time a petition is

filed therefore meet the statute's "for use" requirement.  *See, e.g.*, *Intel Corp.* 542 U.S. at 259 ("[W]e hold that § 1782(a) requires only that a [proceeding] be within reasonable contemplation.").  Respondent relies almost entirely on its tautological argument that because Petitioners have not yet filed, the action is completely speculative.  But Respondent also (correctly) argues that "the Court must assess whether proceedings were in reasonable contemplation at the time the action was filed."  (D.I. 17 at 13 (cleaned up).)  As such, Respondent's allegations and complaints regarding post-filing events, such as whether the contemplated actions have yet been filed, should be disregarded, as by Respondent's own admission, post-filing events are irrelevant to the question at hand.

There is no question that the Application pleaded the contemplated proceedings with sufficient detail and particularity.  Petitioners' Application sets forth the basis for their contemplated civil and private criminal claims to be filed before the Spanish courts in painstaking detail.  *See* Soriano Decl. ¶¶ 22–41, D.I. 5-2.  Petitioners have similarly detailed the statutory bases for the Luxembourgish claim and how the documentary evidence sought will be used to support the civil claim to be filed before the Luxembourgish Courts.  *See* Trevisan Decl. ¶¶ 44, 47, D.I. 5-3.  The Application is accompanied by affidavits from two local attorneys that establish the facts and laws necessary to sustain a claim.  The crux of the Application, as it pertains to Respondent, is, as it concedes, to obtain "evidence about which

parties may have funded litigation relating to a long-running dispute between" the Sulu Claimants and the Government of Malaysia. (D.I. 17 at 1.)

Contrary to Respondent's assertions, courts routinely grant 1782 applications where the evidence sought is intended to identify missing information such as the identity of defendants and banking information (especially where fraud is alleged), provided that, in the case of contemplated claims, the grounds for those claims are clearly specified and the Application states that the claims will be filed once these details are successfully obtained. *See, e.g.*, *In re Team Co., Ltd.,* No. 22-mc-80183-VKD, 2022 WL 4099219, at *3 (N.D. Cal. Sept. 7, 2022) (granting 1782 application that sought to identify a potential defendant and finding that the foreign proceeding was within reasonable contemplation because the applicant specified the grounds for its intended claim under foreign law and anticipated filing once it obtained specific details regarding the defendant's identity); *In re Team Co., Ltd.,* No. 22-mc-80183-VKD, 2023 WL 1442886, at *7 (N.D. Cal. Feb. 1, 2023) (denying subsequent motion to quash); *In re Med. Corp. Tenraiji Kana Dermatology*, No. 23-mc-80123-BLF, 2023 WL 3082351, at *2 (N.D. Cal. Apr. 24, 2023) (finding that the proposed civil lawsuit was within reasonable contemplation because the applicant intended to bring a lawsuit under Japanese law once it learned the identity of the putative defendant); *In re JSC BTA Bank*, 577 F. Supp. 3d 262, 265-66 (S.D.N.Y. 2021) (granting 1782 application where the applicant sought the identity of US dollar

denominated transactions from bank accounts to trace the proceeds of the fraud for use in ongoing and contemplated proceedings as well as identity of additional potential defendants in ongoing proceedings); *In re Med. Inc. Ass'n Shokokai*, No. 22-mc-80250-BLF, 2022 WL 4591796, at *2 (N.D. Cal. Sept. 29, 2022) (finding that "a civil lawsuit is within reasonable contemplation because Aizawa has declared that he intends to bring a lawsuit under Japanese tort law once he learns the identity of the anonymous individual"); *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 438 (S.D.N.Y. 2011) (granting 1782 application where the applicant needed bank documents to prove the underlying fraud); *In re Application of Hornbeam Corp.*, No. 14 Misc. 424, 2014 WL 8775453, at *3 (S.D.N.Y. Dec. 24, 2014) (granting 1782 application where the applicant needed bank records that were "critical" to foreign proceedings that were within reasonable contemplation).

Here, Petitioners have clearly established the factual and legal bases for the underlying claims—the missing element for Luxembourg is only the identity of the precise Therium entity/ies involved. *See* Trevisan Decl. ¶ 46, D.I. 5-3. Contrary to Respondent's position, this is not fatal to a 1782 Application, but rather a well-established basis for granting it.

As to timing, it is not, on its own, a dispositive factor; rather, courts holistically review an application to determine whether reliable indications exist to

support the contention that the proceeding will be filed within a reasonable time. *See, e.g.*, *Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.*, 613 F. App'x 319, 323 (5th Cir. 2015) (holding that a seven-year delay did not preclude judicial assistance under § 1782 because the applicant averred that a foreign proceeding would "be imminently filed with the High Courts in London, United Kingdom," and because the application laid out, "in great detail, the facts that give rise to the prospective lawsuit"); *In re Application of Stephen Shefsky*, No. 2:23-cv-00633-JCM-BNW, 2024 WL 2275215, at *5 (D. Nev. May 20, 2024) (explaining that "timing is not necessarily dispositive when the concerns are mitigated by the sufficiency of actions taken by the applicant"). Here, the timing of the Luxembourgish claim is obviously connected to the discovery sought by Petitioners. And while a date certain was not appended to the Application (which is not required), the tying of the Luxembourgish action to the identification of the precise Therium Group defendants is sufficient. No other elements that remain are necessary for Petitioners to duly file the Luxembourgish claim.

The cases upon which Respondent relies to support its contentions regarding the contemplated actions are easily distinguishable from the instant case. For example, Respondent heavily relies on *In re Ex Parte Application of Blue Dog Group Party Ltd. v. Glaucus Research Group California, LLC*, No. A-23-CV-265-DII-ML, 2023 WL 6978076 (W.D. Tex. Sept. 1, 2023), *report and recommendation*

*adopted sub nom. Blue Dog Group Party Ltd. v. Glaucus Research Group California, LLC*, No. 1:23-CV-265-DII, 2023 WL 6979611 (W.D. Tex. Oct. 23, 2023) to support the proposition that Petitioners should have already filed their action if they intended to (which, as we have already noted, is in any event irrelevant). (D.I. 17 at 10.) But *Blue Dog* does not stand for that proposition at all. In *Blue Dog*, the court found that the applicant had, without explanation, waited five years after the publication of a report that formed the basis of the contemplated claim *before* filing of its Section 1782 application. *Id.* at *4. The post-application filing date was not raised as an issue in that case.

Moreover, in *Blue Dog*, the applicant, among other things, failed to identify the court before which the action would be filed, the particulars of the claim it intended to assert, provided no assertion that it had attempted to gather evidence, or to explain the evidentiary requirements under Australian law. *Id.* at *5. The applicant in *Blue Dog* also failed to identify the foreign attorneys it had engaged or to describe what they had done to substantiate their claims or provide any factual or legal analysis of those contemplated claims. *Id.* at *6. None of these facts are analogous to the case at hand. Indeed, in *Blue Dog,* the court found that the application "[sought] discovery to determine whether it has a viable claim, and that it is unlikely to file suit unless compelled U.S. discovery turns up evidence of Respondents' culpability, indicat[ing] that a foreign proceeding is not within

19

reasonable contemplation." *Id.* at *8. Petitioners' discovery does not seek to determine whether they have a viable claim, it seeks to identify a precise defendant against which to file the claims they know they have.

Similarly, the remaining cases cited by Respondent have no bearing on the present facts. In *In re Intel Corp. Microprocessor Antitrust Litigation*, the court found that the applicant failed to demonstrate that it even had the right to bring the contemplated actions. No. 05-485-JJF, 2008 WL 4861544, at *10 (D. Del. Nov. 7, 2008). The applicant in that case also asserted that it "may bring suit in either one of two different forums, on behalf of a group of unidentified plaintiffs, for unknown claims, at some point in the future, if (and only if) there is a decision in its favor." *Id.* at *15. In *In re of Lucille Holdings Pte. Ltd.*, the court found that the applicant "did not know where, when, or even against whom the allegedly contemplated foreign proceedings would be brought. More, the declaration explicitly states that whether this inchoate foreign proceeding will be brought is dependent on whether Lucille receives satisfactory responses to further inquiries or requests for relief." No. 1:21-mc-99 (GMH), 2022 WL 1421816, at *15 (D.D.C. May 5, 2022). By contrast, Petitioners have identified all of the key elements of their claims, the facts supporting those elements, their standing to sue, and vast majority of the defendants in those actions.

With respect to the Spanish claims, Petitioners have also identified each and every defendant, with the exception of the Therium SPVs.  These include the Sulu Claimants; Gonzalo Stampa; and the Sulu Claimants' counsel Paul Mason, Elizabeth Cohen and Cremades.  *See* Soriano Decl. ¶¶ 25, 38, D.I. 5-2.  Petitioners have identified the courts before which the claims will be brought—the Madrid First Instance Court and the Spanish Investigation Courts of Madrid.  *See id.* at ¶¶ 38, 44.  They have also identified the harm caused by the foreign defendants.  *See id.* at ¶¶ 35–37, 40–42.  Petitioners have further confirmed their standing to file the claims and set forth these facts in declarations filed by foreign counsel.  *See id.* at ¶¶ 28, 43–44.

In contending that Petitioners face "procedural hurdles" to bring the Spanish claims because Mr. Stampa has not exhausted his criminal appeals, Respondent relies upon Second Circuit case law holding that a movant must demonstrate that if the foreign proceeding depends on an intervening event or decision, it must provide an objective basis to conclude that the event will occur or the requisite decision will be favorable.  *See In re BonSens.org*, 95 F.4th 75, 81 (2d Cir. 2024); *IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669, 680 (2d Cir. 2022).  It does not appear that this Court or any court in the Third Circuit has endorsed this proposition.  But even if such requirement exists, Petitioners have met it.  In the Application, Petitioners detailed the multiple laws clearly infringed by Mr. Stampa and that Mr. Stampa had

filed and lost his second instance appeal. *See* Soriano Decl. ¶¶ 23, 33–35, D.I. 5-2. This evidences an objective basis to conclude that Mr. Stampa's final appeal to the Spanish Supreme Court similarly will be unsuccessful (i.e., favorable to Petitioners). And even in *BonSens*, the Court expressly found no objective basis to conclude that any requisite decision on jurisdiction would be favorable to the applicant in that case as two French courts had already summarily dismissed the applicant's action on jurisdictional grounds. 95 F.4th at 81. By contrast, here, the Spanish appellate court's findings rejecting the second instance appeal support Petitioners' position.

As regards the Luxembourgish claims, Petitioners' Application identifies the Sulu Claimants and the Funders as defendants in that contemplated action. *See* Trevisan Decl. ¶¶ 41–42, D.I. 5-3. Petitioners have similarly identified the Court—the Luxembourg *Tribunal d'arrondissement*. *See id.* at ¶ 43. They have substantially identified the harm caused by the Sulu Claimants and the Funder—the enforcement of the cost order for the substantial legal fees they have incurred in Luxembourg to defend themselves against the improperly initiated enforcement actions. *See id.* at ¶¶ 40–43. Finally, Petitioners have identified the statutory bases for their claims, the elements of those claims, how those elements will be satisfied, as well as the legal basis for their standing to sue, all detailed in the foreign counsel declaration. *See id.* at ¶¶ 37–43. This is more than sufficient to satisfy Petitioners' burden that the contemplated actions are not speculative.

**B.    The Court Properly Exercised Its Discretion to Grant the 1782 Application**

"Once the statutory requirements [of 28 U.S.C. § 1782] are met, a district court is free to grant discovery in its discretion." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) (cleaned up).  The Supreme Court has identified four factors that the district courts are to consider in ruling on a § 1782 application: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceeding underway abroad, and the receptivity of the foreign court to federal-court assistance; (3) whether the application conceals an attempt to circumvent foreign proof gathering restrictions of a foreign country; and (4) whether the application is unduly intrusive or burdensome.  *See Intel*, 542 U.S. at 264–65.  Here, all of these factors weigh in favor of Petitioners' Application.

### 1.    The First Discretionary Factor Is Satisfied

Respondent misstates the first discretionary *Intel* factor.  The test is not "whether the target of the requested discovery is outside the reach of the foreign tribunal such that evidence from the respondent would not be available without the aid of Section 1782."  (D.I. 17 at 14.)  Rather, the first *Intel* factor is simply whether the target of the subpoena is a participant in the foreign proceeding:

> First, when the person from whom discovery is sought is a participant in the foreign proceeding (as *Intel* is here), the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought

> from a nonparticipant in the matter arising abroad. A foreign tribunal
> has jurisdiction over those appearing before it, and can itself order them
> to produce evidence. <u>In contrast, nonparticipants in the foreign
> proceeding may be outside the foreign tribunal's jurisdictional reach;
> hence, their evidence, available in the United States, may be
> unobtainable absent § 1782(a) aid</u>.

*Intel*, 542 U.S. at 264 (emphasis added).    *Intel*'s first discretionary factor thus

supports Petitioners' Application.    Respondent is *not* a party to the foreign

proceedings, nor will it be,[6] nor is it present in those jurisdictions.    The only

jurisdiction in which Petitioners can obtain the sought-after discovery from

Respondent is here, which is why this Application was brought here.

Finally, Respondent argues that "most, if not all of the documents requested

from Respondent would be within the reach of the foreign tribunals because they are

also within the possession of several "prospective defendants" . . . each of which

would be subject to the jurisdiction of those foreign tribunals."    (D.I. 17 at 16.)

Almost everything in this statement is incorrect and/or unknowable to Respondent.

*First*, the statement that "most, if not all of the documents requested from

Respondent would be within the reach of the foreign tribunals" is absurd because

Respondent has no idea what documents it may have, since it refuses to look.

---

[6] Respondent remarkably argues that it cannot rely on Petitioners' assertions in the Application that it will not be a defendant in the foreign actions because Petitioners may change their mind after receiving discovery—even though they assert they have no responsive documents.

*Second,* Respondent has no idea whether the Therium entity that might have the same documents will be before the Luxembourg or Spanish courts because the identification of that entity is precisely what the 1782 Application seeks to establish. *Third*, Respondent has no way of knowing what materials the foreign tribunal will order disclosed. *Last*, to the extent that Respondent has non-privileged documents analyzing the Arbitration, which they may very well have if they decided not to invest, they would be the only party in possession of those materials, which are highly relevant to the contemplated proceedings.

## 2.    The Third[7] Discretionary Factor Is Satisfied

Respondent also mischaracterizes the third *Intel* factor—whether the application conceals an attempt to circumvent foreign proof gathering restrictions of a foreign country—which weighs in favor of Petitioners.  Respondent cites *In re Nokia Techs. Oy*, C.A. No. 23-01395-GBW, 2024 WL 1675025 (D. Del. Apr. 18, 2024) for the proposition that when an applicant "has not attempted to seek any discovery" in the foreign proceedings, this factor weighs against discovery.  (D.I. 17 at 17.)  What *Nokia* actually stated was that "Nokia has not attempted to seek any discovery from Amazon in Germany," and found the following:

---

[7] Respondent concedes that the second discretionary factor, whether the foreign tribunal would be receptive to the evidence obtained via the 1782 Application, is satisfied.

> Factor 3 weighs slightly against granting Nokia's petition. Amazon argues that Nokia's request is an attempt to circumvent proof-gathering restrictions in the German courts because Nokia has not requested discovery from Amazon in those proceedings. D.I. 25 at 3-4. However, Nokia explained that German discovery procedures require a party to request specific documents by name—which Nokia contends it cannot do as it does not know what documents would prove Amazon's infringement. D.I. 30 at 2. Accordingly, Nokia contends that it has no available mechanism to obtain the discovery it seeks in Germany.

*Id.* at *4. This means that Amazon, the target of the subpoena, was a *defendant* in the German proceeding, *which was already pending*. Neither of those two facts is present here so there can be no attempt to circumvent foreign proof gathering restrictions in Spain or Luxembourg. The *Nokia* court further recognized that "[i]t is not a prerequisite for a § 1782 applicant to exhaust all potential discovery procedures in the foreign proceedings in order to obtain a federal court's assistance under the statute." *Id.* (citation omitted) (emphasis added). Therefore, even if the contemplated proceedings were already pending, Petitioners would not have been required to exhaust all potential discovery procedures in Spain and Luxembourg. Petitioners thus cannot be criticized for not having sought disclosure in a proceeding that is not yet pending.

Petitioners acknowledge that the Luxembourg and Spanish courts have adopted a far stricter and more limited approach to disclosure as compared to U.S. courts, but this Court has expressly recognized that "a lack of discoverability in the foreign proceeding [alone will] not bar discovery" in a 1782 proceeding. *In re*

*FourWorld Cap. Mgmt. LLC,* 2024 WL 1637400, at *6 (quoting *In re Application of Polygon Glob. Partners LLP*, No. 21-mc-007 WES, 2021 WL 1894733, at *5 (D.R.I. May 11, 2021)); *see also In re BNP Paribas Jersey Tr. Corp. Ltd.*, No. 18-mc-00047 (PAC), 2018 WL 895675, at *3 (S.D.N.Y. Feb. 14, 2018) (finding that a court may grant a 1782 application "where the information sought was not discoverable under the laws of the foreign country at issue in the foreign proceeding"); *In re CI Invs. Inc.*, No. 23 Misc. 434 (GHW) (GS), 2023 WL 8643965, at *5 (S.D.N.Y. Dec. 14, 2023) (same). Indeed, if a reciprocal discovery standard were to be deemed a condition precedent to the granting of a 1782 application, the statute would be read out of existence. Similarly, adopting Respondent's reasoning that foreign discovery must be attempted before a 1782 application can be brought, would erase more than two decades of Supreme Court precedent allowing 1782 applications for contemplated actions.

### 3. The Fourth Intel Factor Also Favors Petitioners

Respondent correctly cites the fourth *Intel* factor, which looks to whether the discovery sought is unduly intrusive or burdensome. Petitioners refute this point in Section I, *supra*, which is hereby incorporated by reference.

## III. RESPONDENT IS NOT ENTITLED TO ATTORNEY'S FEES AND COSTS

As Respondent's Motion should be denied, this Court must also deny its request for attorney's fees. *See Gordian Med., Inc. v. Vaughn*, No. 22-319-MN-

SRF, 2023 WL 2930257, at *4 (D. Del. Apr. 13, 2023). In any event, Respondent's request for attorney's fees is unfounded. Petitioners took more than reasonable steps to resolve the dispute among the parties. Respondent refused to engage in good faith negotiations, reneged on its offer to provide a declaration to substantiate its position that it never invested in the Arbitration, refused to provide a redline when it deemed insufficient the draft declaration provided by Petitioners, and, once Petitioners had narrowed their nineteen original document requests down to a specific subcategory of just one single request, refused to even conduct a search to see if those documents exist. *See* Boyd Decl. ¶¶ 18, 20–21, 26, 35–38. On top of all of this, Respondent filed this Motion after receiving yet another good faith extension while it considered Petitioners' latest proposed declaration, without even attempting to engage in negotiations over a form of declaration that would be acceptable to it—even though Petitioners repeatedly invited it to do so. *See id.* at ¶¶ 34–38. Respondent now contends that it had "no choice" but to file its D.I. 17 at replete with half-truths and deliberate mischaracterizations of Petitioners' demands. This Motion was filed by a party that has utterly failed to engage in good faith negotiations, and it should not be rewarded for those actions.

## IV. RESPONDENT SHOULD BE COMPELLED TO RESPOND TO THE SUBPOENA

Under Rule 45, "a party may compel production of documents within the possession, custody, or control of non-parties." *Ameritas Life Ins. Corp. v.*

28

*Wilmington Sav. Fund Soc'y*, C.A. No. 23-236-GBW, 2024 WL 4452481, at *1 (D. Del. Oct. 9, 2024) (cleaned up).  The scope of discovery permitted under Rule 45 is constrained by Rule 26(b)(1).  *In re TextNow, Inc.*, No. 24-mc-247-JLH-SRF, 2024 WL 2804704, at *2 (D. Del. May 31, 2024); *In re Gen. Mfg. Indus., LLC*, No. 22-mc-596-CFC-SRF, 2023 WL 2213199, at *2 (D. Del. Feb. 24, 2023).  Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Petitioners have already established, *supra*, the relevance of the discovery sought by the Subpoena.

When evaluating a motion to compel, courts look to whether responding to the subpoena would impose an undue burden.  *In re TextNow, Inc.*, 2024 WL 2804704, at *2.  In conducting an undue burden analysis, "courts consider issues such as relevance, the requesting party's need for the documents, the breadth of the request, the time period covered by the subpoena, and the burden imposed."  *Id.* With respect to Request Nos. 1, 3-18, Petitioners request only that Respondent provide a declaration stating:

> I [CF Taurus Declarant] hereby confirm that, based on the fact that neither CF Taurus, nor any of its affiliates, parent entities, or subsidiaries, including, but not limited to, CF Taurus (Cayman) Ltd. and Fortress Investment Group, LLC (collectively, the "**CF Taurus Entities**") invested in the underlying arbitration that is the subject of the Application (the "**Arbitration**"), the CF Taurus Entities have no responsive documents in their possession, custody, or control that relate to any investment by the CF Taurus Entities in the Arbitration.

Boyd Decl., Exhibit I.  For the reasons set forth in Section I, if Respondent is unable to execute this declaration as written, it should be compelled to explain in writing why, in light of its prior representations to Petitioners and to this Court.

With respect to the sole remaining document request, Request No. 2, Petitioners respectfully request that Respondent be compelled to produce any materials in its possession, custody, or control received from the Therium Group, or any entity related to the Therium Group, soliciting an investment in the Arbitration and any non-privileged documents describing its reasons for declining to invest.  To the extent no such documents exist, Petitioners request that Respondent be compelled to sign a declaration that states:

> I [CF Taurus Declarant] hereby confirm that the CF Taurus Entities are not in possession of any materials received from the Therium Group (as that term is defined in the Subpoena), or any entity related to the Therium Group, soliciting an investment in the Arbitration.

*See id.*  Respondent seeks no further relief.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court deny Respondent's Motion to Quash and Vacate in its entirety and grant Petitioners' Motion to Compel Compliance with the Subpoena.

Dated:  February 28, 2025

BAKER & HOSTETLER LLP

*/s/ Jeffrey J. Lyons*
Jeffrey J. Lyons (#6437)
1201 North Market Street, Suite 1407
Wilmington, DE 19801
(302) 407-4222
jjlyons@bakerlaw.com

Oren J. Warshavsky
Gonzalo S. Zeballos
J'Naia L. Boyd
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212-589-4200
Facsimile: 212-589-4201
owarshavsky@bakerlaw.com
gzeballos@bakerlaw.com
jlboyd@bakerlaw.com

*Attorneys for Petronas Azerbaijan (Shah Deniz) S.à.r.l and Petronas South Caucasus S.à.r.l*