IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE EX PARTE APPLICATION OF PETRONAS AZERBAIJAN (SHAH DENIZ) S.A.R.L AND PETRONAS SOUTH CAUCASUS S.A.R.L, PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS | ) ) ) ) ) ) ) ) C.A. No. 24-1283-CFC |

**MEMORANDUM ORDER**

Presently before the Court is the motion of CF Taurus (US) LLC ("CF Taurus") to quash the subpoena sought by Petitioners Petronas Azerbaijan (Shah Deniz) S.à.r.l and Petronas South Caucasus S.à.r.1. ("Petitioners" or "Luxcos") and to vacate the order granting discovery for use in foreign proceedings under 28 U.S.C. § 1782 (D.I. 16), as well as Petitioners' cross-motion to compel compliance with the subpoena (D.I. 21). For the reasons set forth below, CF Taurus's motion is DENIED and Petitioners' cross-motion is GRANTED as MODIFIED.

**I.    BACKGROUND**

The Court writes for the parties and provides only those facts necessary to resolve the present motions. The current discovery dispute arises out of a decade-long dispute relating to a portion of land that now sits within the territory of Malaysia. In 1878, Sultan Mohammed Jamulul Alam ("the Sultan of Sulu") entered into an agreement that ceded that land to certain colonists in exchange for annual payments. (D.I. 4 at 4-5). At some point, the Malaysian government acquired the land and assumed responsibility for annual payments to the purported descendants of the Sultan of Sulu ("the Sulu Claimants") but ultimately stopped making payments in 2013. (*Id.* at 5).

**A.    The Arbitration**

After several years of non-payment, in 2017, the Sulu Claimants sought an alternative dispute resolution process with Malaysia for alleged breach of the 1878 agreement. (D.I. 4 at 5).

1

In 2019, the Civil and Criminal Chamber of the Superior Court of Justice of Madrid ("the Madrid High Court") appointed Mr. Gonzalo Stampa ("Mr. Stampa") as the arbitrator, and formal arbitration proceedings commenced shortly thereafter. (*Id.* at 6). On May 25, 2020, Mr. Stampa issued a preliminary award ("the Partial Award") that purported to confirm the validity of an arbitration agreement between the Sulu Claimants and Malaysia, as well as his own jurisdiction over the proceedings. (*Id.*). In June 2021, at Malaysia's request, the Madrid High Court annulled the judicial appointment of Mr. Stampa as arbitrator and nullified the Partial Award. (*Id.* at 6-7). Despite being ordered by the Madrid High Court in July 2021 to cease activities related to the arbitration, Mr. Stampa purported to move the seat of arbitration from Madrid to Paris. (*Id.* at 7). He then issued a final arbitration award in February 2022, ordering Malaysia to pay the Sulu Claimants $14.92 billion ("the Final Award"). (*Id.* at 8). On May 18, 2022, the Sulu Claimants obtained an order from the District Court of Luxembourg that confirmed the enforceability of the Final Award in Luxembourg. (D.I. 4 at 9). And the Sulu Claimants have since attempted to attach various assets of the Petitioners pursuant to that Final Award. (*Id.* at 9-11).

Malaysia challenges the propriety of all arbitration proceedings and awards that resulted therefrom. On June 6, 2023, the Paris Court of Appeal determined that no enforceable arbitration agreement existed between the Sulu Claimants and Malaysia. (D.I. 4 at 8). That decision was upheld by France's Court of final instance. (*Id.*). Several months later, in December 2023, Mr. Stampa was found criminally liable in a Spanish Criminal Court for his actions relating to the arbitration. (*Id.* at 9). His conviction was upheld on appeal, and he has indicated his intent to appeal to the Spanish Supreme Court. (*Id.*).

  **B.**  **The Contemplated Lawsuits**

Based on the foregoing, Petitioners contemplate bringing lawsuits in Spain and Luxembourg to hold various parties accountable. (*See generally* D.I. 4 at 14-24).

1.     The Spanish Lawsuits

Petitioners claim that if Mr. Stampa's criminal conviction becomes final, he will then be civilly liable for all losses suffered by anyone as a result of his criminal conduct, regardless of whether the injured was a party to the underlying criminal case. (D.I. 4 at 14).  Petitioners cannot sue Mr. Stampa under Spanish law until his criminal conviction becomes final. (*Id.* at 15).[1]  And Mr. Stampa's conviction is not final until the Spanish Supreme Court resolves any appeal. (*Id.*).

Petitioners have nevertheless indicated that they intend to sue Mr. Stampa under Spanish tort law, which requires proof of "(i) a tortious action or omission by a certain person; (ii) actual harm; and (iii) the existence of a causal link between the action or omission performed and the damage caused." (D.I. 4 at 15).  Petitioners allege that, because Mr. Stampa unlawfully issued an arbitration award after his status as arbitrator was revoked, and Petitioners incurred significant costs in fighting enforcement of that award, all three elements are met. (*Id.* at 16).  Petitioners further contend that the Sulu Claimants, their attorneys and the litigation funder, Therium, are also liable under Spanish tort law for failing to act with the requisite "standard of diligence" after Mr. Stampa's arbitration authority was revoked. (*Id.* at 17).  Petitioners therefore intend to bring civil claims against the Sulu Claimants, their attorneys and the funder of the litigation, and Petitioners may also commence private prosecution against these parties as well. (*Id.* at 17-20).

2.     The Luxembourgish Lawsuits

Petitioners also intend to assert claims under Luxembourgish law against the Sulu Claimants and whomever provided their litigation funding. (*See* D.I. 4 at 20-24).  To establish liability under Luxembourgish tort law, Petitioners must show "(i) a tortious act, (ii) damage, and (iii) a causal link between the two." (*Id.* at 21).  Petitioners allege that the actions of the Sulu

---

[1] Petitioners have one year from the date that Mr. Stampa's appeal is adjudicated to file their contemplated civil action against him. (D.I. 4 at 15).

Claimants and their litigation funder in pursuing unlawful arbitration and enforcement proceedings satisfy all three elements. (*Id.* at 21-22). To bring suit in Luxembourg against the litigation funder, Petitioners claim they must identify "the relevant Therium Group entity (or entities) involved in providing financial and strategic support to the Sulu Claimants." (*Id.* at 23).

### C.  Procedural History and the Requested Discovery

On November 22, 2024, Petitioners filed an *ex parte* application pursuant to 28 U.S.C. § 1782, seeking discovery from CF Taurus (and others)[2] for use in the contemplated foreign legal proceedings against several prospective defendants arising from their involvement in allegedly unlawful arbitration. (D.I. 1). On December 9, 2024, the Court granted the application (D.I. 9), and Petitioners served the requested subpoena on CF Taurus the next day (D.I. 23 ¶ 4).

Over the course of several meet-and-confers with CF Taurus, Petitioners have narrowed the scope of the requested discovery. (*Compare* D.I. 1, Ex. G at 12-15 (original document requests), *with* D.I. 22 at 13 (Petitioners representing the scope of their narrowed request), *and* D.I. 23 ¶¶ 32 & 36 (Petitioners' attorney declaration detailing the same)). Petitioners now only seek a subset of documents responsive to Request 2, which reads as follows:

> All non-privileged documents and communications arising from, relating to, or in any way concerning, the Sulu Claimants and any of their alleged claims against Malaysia, the Arbitration and/or the enforcement of the Awards including, but not limited to, the Therium Group's due diligence on, and financial support for, the Sulu Claimants and any of their alleged claims against Malaysia, Sulu Claimants' filing of an *ex parte* petition with the Tribunal de Grande Instance de Paris for recognition of the Partial Award, and any steps taken subsequent to the petition being granted on September 29, 2021, and Mr. Stampa's purported reseating of the Arbitration from Madrid to Spain on October 11, 2021.

---

[2]  According to Petitioners, CF Taurus either belongs to – or is "a significant investor in" – the Therium group of companies. (D.I. 1 at 7; *see also* D.I. 5 ¶ 5 n.1). CF Taurus disputes this characterization but nevertheless admits that it had a commercial relationship with Therium. (D.I. 17 at 6-7).

(D.I. 1, Ex. G at 13 (Document Request No. 2)). CF Taurus has moved to quash the subpoena and to vacate the December 9, 2024 order granting Petitioners' request for discovery. (D.I. 16; *see also* D.I. 17 & 18). Petitioners filed a cross-motion to compel CF Taurus to produce a limited subset of documents relating to Therium soliciting investment in the arbitration and CF Taurus declining to so invest. (D.I. 21; *see also* D.I. 22 & 23).[3] Both motions were fully briefed as of March 24, 2025. (D.I. 24, 25, 26 & 27).

## II. LEGAL STANDARD

Under 28 U.S.C. § 1782(a), district courts are authorized to order discovery for use in foreign proceedings. To obtain discovery for foreign litigants, three statutory conditions must be satisfied: "(1) the person from whom discovery is sought 'resides or is found' within the district; (2) the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the application is made by an 'interested person.'" *SPS Corp I, Fundo de Investimento em Direitos Creditorios Nao Padronizados v. Gen. Motors Co.*, 110 F.4th 586, 590-91 (3d Cir. 2024) (quoting 28 U.S.C. § 1782(a)). If the statutory requirements are met, then the district court has discretion to order discovery, bearing in mind the four factors articulated by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). Those factors are (1) whether the requested discovery is within the foreign tribunal's jurisdictional reach, (2) the nature and character of the foreign tribunal and proceeding, as well as the foreign tribunal's receptivity to U.S. federal-court judicial assistance, (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies" and (4) whether the request for discovery is "unduly intrusive or burdensome." *SPS Corp*, 110 F.4th at 591-93 (quoting *Intel*, 542 U.S. at 264-65).

---

[3] For the remaining document requests (Nos. 1 & 3-18), Petitioners seek a formal declaration from CF Taurus stating that it has no responsive documents. (D.I. 22 at 29).

5

### III.  DISCUSSION

#### A.  Statutory Requirements of § 1782

CF Taurus concedes that it is found in this district and that Petitioners are interested persons within the meaning of § 1782(a).  (*See* D.I. 22 at 14; *see also* D.I. 17).  Therefore, the only statutory factor that the Court must address is whether the requested discovery is "for use in a proceeding in a foreign or international tribunal."  The Court finds that it is.

For requested discovery to satisfy the "for use" requirement of § 1782, the proceedings need not be "pending" or "imminent."  *Intel*, 542 U.S. at 259.  Instead, all that is required is that the foreign proceeding "be within reasonable contemplation."  *Id.*  Courts in this district have described the "for use" requirement as a "low threshold."  *See, e.g.*, *In re Ex Parte Application of Eni S.p.A.*, No. 20-mc-334-MN, 2021 WL 1063390, at *3 (D. Del. Mar. 19, 2021); *In re Selman*, C.A. No. 23-895-CJB, 2024 WL 1092025, at *3 (D. Del. Mar. 13, 2024); *Leguide.com SAS v. Google LLC*, No. 21-mc-219-JLH-SRF, 2025 WL 254829, at *4 (D. Del. Jan. 21, 2025).  That being said, "future proceedings must be more than speculative . . . and a district court must insist on reliable indications of the likelihood that proceedings will be instituted within a reasonable time."  *SPS Corp*, 110 F.4th at 591 (citations and internal quotations marks omitted).

##### 1.  Whether Foreign Proceedings Are Within "Reasonable Contemplation"

Merely retaining counsel, discussing the possibility of litigating and filing a § 1782 application are not enough to make an objective showing that the foreign proceedings are in "reasonable contemplation."  *See, e.g.*, *Matter of Wei for Ord. Seeking Discovery Under 28 U.S.C. §1782*, C.A. No. 18-mc-117-RGA, 2018 WL 5268125, at *2 (D. Del. Oct. 23, 2018).  But Petitioners' application goes further here.  (*See* D.I. 1, 4, 5 & 22).

As to the contemplated Spanish proceedings, Petitioners identify the specific cause of action that they intend to bring and the defendants against whom the litigation will be brought.

6

(D.I. 5, Ex. B-1 ¶¶ 32, 38).  Petitioners also identify (1) the elements of each cause of action and explain how each potential defendant has met each element (*id.* ¶¶ 33-37, 39-42), (2) the specific court in which they intend to file their claims (*id.* ¶¶ 25, 38) and (3) a timeframe in which they must file their action(s) (*id.* ¶¶ 30-31).  Petitioners have also retained Spanish counsel for any necessary advice on those potential claims.  (*Id.* ¶ 2).

As to the contemplated Luxembourgish proceedings, Petitioners again identify the specific causes of action (D.I. 5, Ex. C-1 ¶ 37), set forth the elements for each cause of action (*id.* ¶ 38) and provide an explanation of how each element of the causes of action is met (*id.* ¶¶ 40-43). Petitioners also explain why they cannot file their actions in Luxembourg without the requested discovery (*id.* ¶ 46) and have retained counsel in their related matters pending in the Luxembourgish courts (*id.* ¶ 2).

Petitioners have provided "reliable indications of the likelihood that proceedings will be instituted within a reasonable time."  *Matter of Wei*, 2018 WL 5268125, at *2 (internal quotation marks and citation omitted).  Petitioners have retained foreign counsel, determined the viability of their claims, explained why their claims cannot yet be brought and are prepared to imminently file said claims.  (*See* D.I. 5, Ex. B-1 ¶¶ 2, 25 & 30-42; D.I. 5, Ex. C-1 ¶¶ 2, 37-38, 40-43 & 46).  This is sufficient to satisfy the "for use" requirement of § 1782.  *See In re Request From Vienna*, No. 23-mc-258-CFC, 2023 WL 6278815, at *4 (D. Del. Sept. 26, 2023) ("for use" requirement satisfied when petitioner obtained foreign counsel and explained why the discovery was needed before commencing foreign proceedings, and petitioner had initiated related domestic litigation).

Despite CF Taurus's claims to the contrary (D.I. 17 at 9-10), Petitioners are not using their § 1782 application to determine the viability of claims.  Instead, Petitioners have lain out in detail how each element of each contemplated cause of action is met by conduct relating to the arbitration

proceedings. (*See* D.I. 5, Ex. C-1 ¶¶ 37-43; D.I. 5, Ex. B-1 ¶¶ 33-42). In any event, courts in this district have allowed § 1782 discovery when the discovery was requested, in part, to validate the petitioner's contemplated foreign claims. *See, e.g.*, *In re Request From Vienna*, 2023 WL 6278815, at *4 ("Amgen has retained Austrian and Slovenian counsel, who are prepared to file preliminary injunction and other patent-infringement proceedings once Amgen has had an opportunity to review the documents and testimony covered by its application to validate its contemplated infringement claims."). This argument is therefore unpersuasive.

CF Taurus also claims that "Petitioners fail to explain why they have not already sued" (D.I. 17 at 10), attempting to call into question whether the requested discovery is really "for use" in foreign litigation. But Petitioners state that the Spanish civil action against Mr. Stampa cannot be brought until any appeal of his criminal conviction is resolved by the Spanish Supreme Court. (D.I. 5, Ex. B-1 ¶ 30). And the Spanish claims against the other potential defendants "would be filed jointly with the civil action against Mr. Stampa in the Madrid First Instance Court." (*Id.* ¶ 38). As to the Luxembourgish claims, Petitioners apparently must identify the relevant Therium entity (or entities) involved with the Sulu Claimants before filing the Luxembourgish tort claims. (D.I. 5, Ex. C-1 ¶ 46). In the Court's view, Petitioners have adequately explained why they have yet to file the contemplated Spanish or Luxembourgish proceedings. CF Taurus's related argument that Petitioners give no details as to when they will file the contemplated proceedings also fails. (*See* D.I. 17 at 11).[4] Petitioners state that the limitations period for their contemplated Spanish lawsuit is one year from the date of Mr. Stampa's conviction being final. (D.I. 5, Ex. B-1 ¶ 31). Therefore, there is a timeframe as to when the Spanish lawsuits must be filed. And

---

[4] To the extent CF Taurus contends that Petitioners must contemplate filing "imminently" (D.I. 17 at 11), the Supreme Court has rejected the notion that foreign proceedings must be "imminent" for the discovery to be "for use" in the proceedings, *Intel*, 542 U.S. at 264-65.

although no timeline was provided as to the Luxembourgish lawsuits, Petitioners have alleged that they cannot file suit until the identity of the specific Therium entity that funded the Sulu Claimants in the arbitration is identified. (D.I. 5, Ex. C-1 ¶ 46).

CF Taurus next argues that, because Mr. Stampa's criminal conviction is not yet final, Petitioners must wait until an appeal is decided before seeking § 1782 relief. (*See* D.I. 17 at 11-12). The Court disagrees. Two Spanish courts have already found Mr. Stampa to be criminally liable. (D.I. 5, Ex. B-1 ¶¶ 22-23). CF Taurus does not explain why it expects an appeal by Mr. Stampa to the Spanish Supreme Court to be successful or why Petitioners here must wait and see before seeking discovery under § 1782. And the cases cited by CF Taurus do not compel such a result. In *IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669 (2d Cir. 2022), the Second Circuit found that the requested discovery did not satisfy the "for use" factor when a separate party had to (but did not yet) first decline to bring suit before the § 1782 petitioner could sue in a foreign proceeding – and the § 1782 petitioner also had to seek leave of court to initiate suit. *Id.* at 679-80. And in *In re BonSens.org*, 95 F.4th 75 (2d Cir. 2024), the Second Circuit found that the requested discovery was not "for use" in a foreign proceeding where the underlying foreign complaint was dismissed by a French administrative court – and that dismissal was upheld on appeal. *Id.* at 81 ("[T]wo French courts have summarily dismissed BonSens' action on jurisdictional grounds. Based on those decisions, it can fairly be said that a reversal by the Conseil d'État on the jurisdictional issue is 'uncertain at best,' and BonSens has 'not carried its burden to show that' a merits proceeding is 'within reasonable contemplation.'" (quoting *IJK Palm*, 33 F.4th at 680)). Here, Petitioners' ability to bring claims does not depend on the discretionary action (or inaction) of a separate party. Rather, Petitioners' ability rests upon the decision of Spain's highest court. By convicting Mr. Stampa and affirming his conviction, lower Spanish courts have ruled in

a way that allows Petitioners to pursue their claims, and CF Taurus has articulated no reason why the Spanish Supreme Court would reach a conclusion different than the courts that preceded it.

Finally, CF Taurus claims that no affirmative steps have been taken toward filing the contemplated foreign litigation and that Petitioners do not even specify who they will sue. (D.I. 17 at 12). Not so. Petitioners have retained foreign counsel for the contemplated and related actions (D.I. 5, Ex. B-1 ¶ 2; D.I. 5, Ex. C-1 ¶ 2), identified the specific causes of action they intend to pursue under Spanish and Luxembourgish law (D.I. 5, Ex. B-1 ¶¶ 33-34; D.I. 5, Ex. C-1 ¶¶ 37-38), determined the viability and timing of those claims (D.I. 5, Ex. B-1 ¶¶ 35-37, 40-42; D.I. 5, Ex. C-1 ¶¶ 39-42) and proffered a sufficient reason as to why the requested discovery is needed to file suit in Luxembourg. In light of these steps, CF Taurus's reliance on *Matter of Wei*, 2018 WL 5268125, is misplaced. There, the court found it important that the § 1782 petitioner had not retained foreign counsel nor had he identified specific causes of action he intended to pursue. *Id.* at *2. As explained above, those circumstances are not present here.

In sum, the Court concludes that Petitioners have sufficiently shown that the Spanish and Luxembourgish foreign proceedings are within "reasonable contemplation."[5]

        2.        <u>Whether the Requested Discovery is Relevant</u>

CF Taurus also claims that Petitioners' application does not satisfy the "for use" factor because Petitioners have failed to show that the requested discovery is relevant to any contemplated litigation. (D.I. 17 at 13-14). The Court disagrees any such showing is necessary.

---

[5] As to CF Taurus's complaint that Petitioners have not named the defendants in the potential foreign proceedings (D.I. 17 at 12), the Court disagrees that more specificity is required. Petitioners state their intention to file Spanish proceedings against Mr. Stampa (D.I. 5, Ex. B-1 ¶ 25), the Sulu Claimants, their attorneys and Therium (D.I. 5, Ex. B-1 ¶ 38). And Petitioners state their intention to file a Luxembourgish action against the Sulu Claimants and Therium. (D.I. 5, Ex. C-1 ¶¶ 41-42). CF Taurus provides no authority to suggest any "firm commitment" to specific defendants is required at this stage.

Neither the Supreme Court nor the Third Circuit have imposed any relevancy requirement on the "for use" statutory factor.⁶ Until the Third Circuit clearly instructs otherwise, this Court ultimately agrees with those courts that have found no relevance threshold exists under the "for use" statutory factor. *See, e.g.*, *Matter of Rosa Carolina Germano Dos Santos*, C.A. No. 22-1567 (ES), 2023 WL 4993673, at *5 (D.N.J. Aug. 4, 2023) ("[W]hether the discovery requests are overly broad or irrelevant are not proper inquiries when determining the second statutory factor."), *aff'd sub nom. Matter of Dos Santos*, C.A. No. 22-01567, 2024 WL 1006259, at *4 (D.N.J. Mar. 8, 2024) ("The law does not impose a relevance inquiry on Petitioners."); *see also In re Ex Parte Application of Eni S.p.A.*, 2021 WL 1063390, at *3 ("Respondents therefore speculate as to the admissibility and usefulness of the evidence Eni seeks.  Section 1782, however, does not require the district court to conduct such a speculative inquiry. . . . Respondents' arguments about the ultimate admissibility and relevance of Respondents' documents do not show that the requested discovery would not be 'for use' in the Italian proceedings under § 1782.").

Even if the Court were to adopt a standard akin to the "plainly irrelevant" one used by the First and Second Circuits, Petitioners have nevertheless made a sufficient showing.⁷ Petitioners

---

⁶  Other circuits have held that the requested discovery must not be plainly irrelevant to the foreign proceedings to satisfy the "for use" requirement. *See, e.g.*, *In re Schlich*, 893 F.3d 40, 52 (1st Cir. 2018) ("[A] request for discovery under § 1782 that is plainly irrelevant to the foreign proceeding will fail to meet the statutory 'for use' requirement, and must be denied before the court reaches the discretionary *Intel* factors."); *Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 n.7 (2d Cir. 2015) ("The relevance of the information sought may be necessary, however, insofar as it is difficult to conceive how information that is plainly irrelevant to the foreign proceeding could be said to be 'for use' in that proceeding.").

⁷  CF Taurus attempts to impose a relevance standard for the "for use" factor similar to that of Federal Rules of Civil Procedure 26 and 45. (D.I. 17 at 13).  That standard is more appropriately considered under the fourth *Intel* factor. *See In re Ex Parte Glob. Energy Horizons Corp.*, 647 F. App'x 83, 85-86 (3d Cir. 2016) ("Section 1782 expressly incorporates the Federal Rules of Civil Procedure and the fourth factor aligns with Rules

11

seek discovery regarding the identity of the Therium entities involved in the Sulu Claimants' arbitration, as well as discovery regarding Therium's attempts to solicit funding for that arbitration. (D.I. 24 at 23). In courts that apply the "plainly irrelevant" standard, the evidence sought is "for use" in a foreign proceeding when it "will be employed with some advantage or serve some use in the proceeding." *KPMG*, 798 F.3d at 120 (cleaned up). The identity of Therium serves use in the contemplated Luxembourgish proceedings because it allows Petitioners to initiate suit against the proper entity (D.I. 5, Ex. C-1 ¶ 46), and the remaining discovery may inform Therium's level of participation in the arbitration proceedings (*id.* ¶ 48; *see also* D.I. 5, Ex. B-1 ¶ 42). At this stage, the requested discovery is sufficiently relevant to be "for use" in the contemplated foreign proceedings. *See In re Selman*, 2024 WL 1092025, at *5 ("[A]t least some of the information Petitioners seek is surely relevant and 'for use' in the Chilean Proceeding. Therefore, and in light of the *de minimis* burden that Petitioners face in showing that this requirement is met, the Court cannot deny the Application on this ground." (applying out-of-circuit law)).

CF Taurus's remaining arguments to the contrary are unpersuasive. (*See* D.I. 17 at 13-14). That CF Taurus was created "years after" Therium invested in the Sulu Claimant arbitration proceedings does not mean that CF Taurus cannot have discoverable information – *e.g.*, Therium communications soliciting investment while proceedings were ongoing. (*See* D.I. 22 at 12). And whether CF Taurus is specifically referenced in foreign counsel declarations is not dispositive; through their application and motion papers, Petitioners have shown that requested discovery from CF Taurus is sufficiently relevant to be "for use" in the foreign proceedings.

In sum, the Court finds that all statutory requirements of 28 U.S.C. § 1782(a) are met here.

---

26 and 45. Thus, assessment of the fourth factor is virtually identical to the familiar 'overly burdensome' analysis that is integral to the Federal Rules.").

### B. *Intel* Factors

If the statutory requirements of § 1782 are satisfied, district courts then have discretion to order the requested discovery for use in foreign proceedings. *Intel*, 542 U.S. at 264. In deciding whether to exercise its discretion, the Court is guided by the four factors articulated in *Intel*. "The party opposing discovery under section 1782(a) has the burden of demonstrating offense to the foreign jurisdiction, or any other facts warranting the denial of a particular application." *In re Chevron Corp.*, 633 F.3d 153, 162 (3d Cir. 2011) (cleaned up).

#### 1. Whether the Discovery is Unobtainable in the Foreign Forum

The first *Intel* factor considers whether the discovery is obtainable in the foreign jurisdiction. *Intel*, 542 U.S. at 264. "[T]he focus of *Intel*'s first factor is not simply whether the party from whom discovery is sought is a participant in the foreign proceeding." *SPS Corp*, 110 F.4th at 592; *see also Intel*, 542 U.S. at 264. To weigh in favor of granting the request for foreign discovery under § 1782, the requested discovery must lie outside the foreign court's jurisdictional reach. *SPS Corp*, 110 F.4th at 592; *see also Intel*, 542 U.S. at 264 ("Nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.").

Petitioners have represented that CF Taurus will not be a party to either the Spanish or Luxembourgish proceedings. (D.I. 22 at 24). Although CF Taurus doubts this representation (*see* D.I. 17 at 15 n.5), the Court cannot conclude at this juncture that CF Taurus will likely be named as a party in the Spanish and Luxembourgish suits. The Court thus proceeds under the assumption that CF Taurus will be a non-participant in the contemplated foreign proceedings.

Turning to whether the requested discovery is unobtainable as beyond the reach of the Spanish or Luxembourgish courts, the Court ultimately concludes that it is.[8]  As mentioned previously, Petitioners now only seek a limited subset of documents responsive to Request No. 2. (D.I. 21; *see also* D.I. 1, Ex. G at 13 (Document Request No. 2)).  For the contemplated action in Luxembourg, Petitioners note that Luxembourgish courts may only order production of documents physically located in Luxembourg.  (D.I. 5, Ex. C-1 ¶ 51).  CF Taurus does not challenge the stated jurisdictional limitations of the Luxembourgish courts.  And there is no evidence that the requested documents are located in Luxembourg.  CF Taurus's only response on this point is that the requested documents ***could*** be in a contemplated party's possession and therefore within the foreign court's jurisdiction.  (*See* D.I. 17 at 15-17; D.I. 24 at 18-20).  This generic assertion is insufficient to show that the requested discovery is within the jurisdictional reach of a Luxembourgish court.  Similarly, for the contemplated Spanish action, Spanish courts would not permit the requested discovery here via a pre-suit discovery mechanism.  (D.I. 5, Ex. B-1 ¶ 42). And CF Taurus has made no showing that the requested documents lie within the jurisdictional reach of Spanish courts.  (*See* D.I. 17 at 15-17).  On this record, the Court concludes that the requested discovery is unobtainable in the foreign fora.

Therefore, the first *Intel* factor weighs in favor of permitting the requested discovery.

        2.     <u>Receptivity of Foreign Tribunals</u>

CF Taurus does not dispute that the second *Intel* factor is satisfied.  (*See* D.I. 17 (CF Taurus's opening brief ignoring second *Intel* factor)); D.I. 22 at 25 n.7 (Petitioners arguing that

---

[8]  To the extent that Petitioners argue the first *Intel* factor focuses ***only*** on whether CF Taurus is a party to the foreign proceedings (D.I. 22 at 23), they are wrong.  As *SPS Corp* makes clear, that is an overly restrictive reading of *Intel*.  *See SPS Corp*, 110 F.4th at 592.

CF Taurus concedes the second *Intel* factor); D.I. 24 (CF Taurus silent in reply)).  The Court therefore considers this factor to weigh in favor of permitting the requested discovery.

            3.        <u>Circumvention of Foreign Proof-Gathering Restrictions</u>

The third *Intel* factor instructs courts to consider "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265.  A discovery request under § 1782 is viewed as an attempt to circumvent foreign proof-gathering restrictions when the foreign tribunal has already rejected requests for the same discovery.  *See In re Chevron Corp.*, 633 F.3d at 163; *see also In re Application of Gilead Pharmasset LLC*, C.A. No. 14-mc-243 (GMS), 2015 WL 1903957, at *4 (D. Del. Apr. 14, 2015) (no requirement to exhaust all possible foreign discovery procedures but perception that § 1782 is being used to "side-step" less favorable discovery rules is a factor the court may consider).  "[The Third Circuit] ha[s] never held that an applicant must seek discovery relief in the foreign forum first." *In re O'Keeffe*, 646 F. App'x 263, 268 (3d Cir. 2016).

Petitioners claim that they cannot obtain the requested discovery in Luxembourg because Luxembourgish courts will not order discovery of documents physically located outside of Luxembourg.  (D.I. 5, Ex. C-1 ¶ 51).[9]  Petitioners similarly claim that the requested discovery is unavailable in Spain because Spanish courts ordinarily will not permit a party to obtain discovery of this type prior to commencement of a legal action.  (D.I. 5, Ex. B-1 ¶ 42).  Petitioners have not previously sought the discovery in foreign tribunals, and their request is not an attempt to circumvent a foreign tribunal's proof-gathering restriction.  Rather, Petitioners are simply unable to obtain the discovery from the foreign tribunals at this time.  And Petitioners have certainly not

---

[9]    Additionally, to obtain discovery in the Luxembourgish court, the requested documents must apparently be described "very" specifically.  (D.I. 5, Ex. C-1 ¶ 51).  That level of detail contrasts with the more generic requests in Petitioners' § 1782(a) application.

15

concealed that fact. *See In re Request From Vienna*, 2023 WL 6278815, at *5 (third *Intel* factor favored party requesting discovery when it had "disclosed that it ha[d] no available mechanism to obtain pre-suit discovery in the foreign jurisdictions").

The third *Intel* factor therefore weighs slightly in favor of granting the requested discovery.

### 4. Undue Burden or Intrusiveness

The fourth and final *Intel* factor allows the Court to reject or modify "unduly intrusive or burdensome requests." *Intel*, 542 U.S. at 265. This undue burden inquiry mirrors "the familiar 'overly burdensome' analysis that is integral to the Federal Rules." *Glob. Energy Horizons*, 647 F. App'x at 86; *see also id.* at 85-86 ("Section 1782 expressly incorporates the Federal Rules of Civil Procedure and the fourth factor aligns with Rules 26 and 45."). "In assessing this factor, the Court asks whether, as in a Rule 26 inquiry, the discovery requested is relevant to any party's claim or defense and proportional to the needs of the case." *In re Selman*, 2024 WL 1092025, at *8; *see also In re Sevier*, C.A. No. 22-mc-80-RGA-SRF, 2022 WL 3923679, at *3 (D. Del. Aug. 31, 2022). If the request is unduly burdensome or intrusive, the Court should attempt to "trim" the request rather than outright deny it. *In re Biomet Orthopaedics Switzerland GmBh*, 742 F. App'x 690, 699 (3d Cir. 2018).

Petitioners' requested discovery – albeit narrowed – is unduly intrusive or burdensome. Though their motion to compel, Petitioners purport to narrow their request to only those documents "relating to any solicitation received from the Therium Group or any related entities soliciting an investment in the [Sulu Claimants' arbitration], and any non-privileged materials relating to Respondent's decision to decline to make that investment." (D.I. 21). Yet in their brief, Petitioners seek something broader: "non-privileged documents analyzing the [a]rbitration." (D.I. 22 at 25).[10]

---

[10] Despite CF Taurus's complaints to the contrary (D.I. 24 at 19), this narrower category of documents is fairly encompassed by Petitioners' original Request No. 2, which seeks all

16

It is unclear how CF Taurus's wholly internal materials analyzing the Sulu Claimants' arbitration proceedings in general would have any bearing on Therium's knowledge of the unlawfulness of those proceedings so as to cross the Rule 26 threshold. *See In re Schlich*, 893 F.3d at 52 ("[E]ven when a discovery request is sufficiently relevant to be deemed 'for use' in a foreign proceeding, there is nothing that prevents district courts from considering relevancy under the discretionary *Intel* factors."); *see also Leguide.com SAS v. Google LLC*, 2025 WL 254829, at *5. And Petitioners offer no help, simply claiming that this category is "highly relevant" without elaboration. (*See* D.I. 22 at 25). On the current record, and in light of the contemplated foreign proceedings, the Court finds that the proper scope of discovery from CF Taurus should be focused on attempts by the Therium Group (and its related entities) to solicit investment from CF Taurus in the Sulu Claimants' arbitration and enforcement proceedings. This narrowed scope permits identification of the relevant Therium entities involved in any funding and may reflect those entities' knowledge of the (il)legality of the arbitration proceedings. The Court will therefore exercise its discretion and limit Petitioners' request as follows: CF Taurus shall produce all documents in its possession, custody or control that are communications (including attachments thereto) with the Therium Group (or with any Therium Group related entity) relating to an attempt to solicit investment in any of the Sulu Claimants' arbitration and enforcement proceedings.

Finally, because Petitioners have represented that the discovery sought is now limited to "a single specific sub-category of documents" within Request No. 2 (D.I. 22 at 13), the Court will not at this time require CF Taurus to execute the requested declaration for Request Nos. 1 & 3-18 (*id.* at 29). But the Court will require CF Taurus to execute a declaration stating its non-

---

non-privileged documents relating to the arbitration and/or enforcement of the arbitration awards (*see* D.I. 1, Ex. G at 13).

17

involvement (direct or otherwise) in the Sulu Claimants' arbitration and enforcement proceedings, as originally offered during the parties' meet-and-confer. (D.I. 23, Ex. F. at 4 (email from CF Taurus's counsel) ("During our meet and confer, I explained that Respondent did not invest in the Sulu Litigation, and that we would be happy to provide a declaration to that effect."); *see also id.* ("We again confirm that the CF Taurus Entities (as defined in your draft declaration) did not invest, finance, or in any way provide support to the Sulu Claimants or the Sulu Litigation, whether directly or indirectly.")).

* * *

Petitioners have satisfied the statutory requirements of § 1782. On balance, the *Intel* factors favor granting the requested discovery. The Court exercises its discretion and orders CF Taurus to provide limited discovery in its possession relating to Therium's investment (realized or attempted) in the Sulu Claimants' proceedings as set forth above.

### IV.   CONCLUSION

For the foregoing reasons, CF Taurus's motion to quash and vacate (D.I. 16) is DENIED and Petitioners' cross-motion to compel (D.I. 21) is GRANTED as MODIFIED.[11]

Dated: July 3, 2025

_____
UNITED STATES MAGISTRATE JUDGE

---

[11] Because its motion was unsuccessful, CF Taurus's request for attorneys' fees and costs is also DENIED.